Van Voorhis, J.
The defendant pleaded guilty after his motion to suppress alleged illegally obtained evidence and an inculpatory statement made by himself had been denied. At the hearing, the arresting officer testified that he was informed by a lieutenant from the Criminal Investigation Bureau that an anonymous phone call had been received informing the lieutenant that a described man named Bernie Horowitz was then shaping up for work at the mail room of the New York Times Building and had in his possession a brown paper bag containing stolen United States savings bonds and pornographic literature; that he found the defendant at the mail room of the Times Building, identified himself as a police officer, asked the defendant his name and obtained a brown paper bag which the defendant carried containing United States savings bonds in the name of Anthony Cardone which were later identified as having been stolen. The Appellate Division held that the arresting officer would have been derelict in his duty if he had not pursued the information given him and that he had reasonable grounds to believe that he had these stolen bonds in his possession. Two dissenting Justices at the Appellate Division considered that there was lack of probable cause for the search and seizure and the arrest.
The defendant argues that the bonds were obtained from him by means of an illegal search and seizure and that their use as evidence should have been suppressed; that the statement made by him after arrest was prompted thereby and thus was obtained in violation of his constitutional rights and should also have been suppressed.
The majority opinion of the Appellate Division recognizes that the information concerning these stolen bonds was supplied *58 by an anonymous informer, but adds (27 A D 2d 367, 368) that “ when, in pursuing that information, he saw a man, having the exact physical attributes and carrying a brown paper bag, in the very place stated by the anonymous caller, Weber had personally verified every facet of the information given to him except whether the defendant had stolen bonds in the paper bag. And surely, with every other bit of the caller’s information thus personally verified, Weber had reasonable grounds to believe that the remaining bit of the caller’s information—that the defendant would have stolen bonds with him—was likewise true. (Draper v. United States, 358 U. S. 307.) ”
The information supplied by the anonymous informer, every facet of which the majority opinion states had been verified by the detective, was simply, as is stated in the brief for the People, that the stolen property was in the hands of a man named Bernie Horowitz who was presently shaping up for work in the mail room at the New York Times Building, that he had in his possession a brown paper bag containing stolen United States savings bonds and pornographic literature, that Horowitz was over six feet tall, weighed more than 200 pounds, and was known as ‘ ‘ Mr. Clean ’ ’ because of the lack of hair on his head. It turned out that defendant answered that description and, when arrested, he proved to have the stolen United States savings bonds in the paper bag.
All that this amounts to is that the anonymous informer described the defendant correctly and had the right man as the sequel proved when he was found to have the stolen bonds in his possession. That is not the kind of evidence necessary to prove the reliability of the informer as required by People v. Coffey (12 N Y 2d 443, cert. den. 376 U. S. 916; cf. Federal habeas corpus United States ex rel. Coffey v. Fay, 344 F. 2d 625); People v. Malinsky (15 N Y 2d 86); Roviaro v. United States (353 U. S. 53); McCray v. Illinois (386 U. S. 300); People v. Quarles (44 Misc 2d 955) and similar decisions. In the McCray case, decided by the United States Supreme Court in 1967, our ruling in Malinsky was sustained to the extent of ruling that the Roviaro case did not require disclosure of the name of the informer, but in McCray the reliability of the informer was shown by testimony of police officers that during one to two years they had known the informant, and that he had frequently *59 furnished accurate information about narcotics activities which had led to many convictions. No similar evidence is in this record to support the reliability of this informer, which was demonstrated entirely by the fact that the man who was identified by the informer and arrested possessed the stolen property. That is not enough (Roviaro v. United States, supra; People v. Malinsky, supra).
The correctness of the 3 to 2 decision by the Appellate Division reopens the legal philosophy of the decision in People v. Defore (242 N. Y. 13). There are those, including the writer of this opinion, who still believe that People v. Defore represented a better choice between evils than did Mapp v. Ohio (367 U. S. 643) by which it was overruled. For better or worse, however, the courts of this country are now committed to the Mapp doctrine.
It is true that in this instance the information which led to the arrest of appellant was relayed to the detective who apprehended him by a lieutenant attached to the Central Intelligence Bureau of the New York City Police Department. The lieutenant related to the detective what purported to have been said by the informer in his telephone call to the bureau. In People v. Montague (19 N Y 2d 121, 122-123) the court majority said, in an opinion by Judge Burke: “In United States v. Ventresca (supra) [380 U. S. 102] the United States Supreme Court concluded that the affidavit of a Government agent based upon observations ‘ of fellow officers of the Government engaged in a common investigation [furnished] * * * a reliable basis for a warrant applied for by one of their number.’ (380 U. S., p. 111.) The ‘ underlying circumstance ’ from which the affiant and the issuing officer in Ventresca could have concluded that the informants were credible or their information reliable was the fact that the informants were Government agents whose veracity could with relative assurance be relied upon.”
In Ventresca the Government agent informants gave information derived from their own personal observations of the existence of a whiskey still which was the subject of the search. They themselves had smelled the sour mash and, being Government agents, were presumed to be reliable. The majority in Montague appear to have considered that some members of the police knew of facts sufficient to constitute probable cause *60 (from which, conclusion the dissenters disagreed) and that it was not necessary for the arresting officer personally to possess the aggregate of information known to the police bureau, in which latter conclusion the court was unanimously agreed. The division in the court in Montague arose over the circumstance that the dissenters considered that the record showed no verification of the reliability of the informer, whereas the majority considered that there was evidence in the possession of the various members of the bureau which, in the aggregate, was enough to spell out probable cause regardless of the informant.
The question was argued in People v. Vetrano (20 N Y 2d 698) whether an arrest could be made by the police of the City of White Plains merely on the say so of the Police Department of the City of Yonkers where the crime was committed. The question was not decided, as the memorandum of affirmance shows, inasmuch as it appeared that the account of the attempted robbery in Yonkers was supplied to the Yonkers Police Department by the victim himself.
The controlling principle seems to be that it is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause provided that he acts upon the direction of or as a result of communication with a superior or brother officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest. This record does not show that any of the law enforcement officers had facts before them sufficient to indicate that this anonymous informer was reliable, or that the police had other information, not derived from the informer, which was sufficient, in itself, to constitute probable cause.
Under the procedure adopted in People v. Malinsky (15 N Y 2d 86, 96; 19 N Y 2d 262) where we withheld determination of the appeal and remitted the case to the Supreme Court for a further hearing on the motion to suppress in order that it might be determined whether ‘ ‘ the police actually received a tip from a dependable informer or had evidence, apart from or in addition to the informer’s communication, to establish probable cause for the arrests of the defendants ’ ’, the determination of this appeal is withheld and the case remitted to the Supreme Court, New *61 York County, for a further hearing on the motion to suppress in accordance with this opinion.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Determination of appeal withheld and case remitted to Supreme Court, New York County, for a further hearing on the motion to suppress in accordance with the opinion herein.