**UNITED STATES, Appellee,**

v.

**Private E–2 Gumersindo GUTIERREZ, SSN 584–70–0805, United States Army, Appellant.**

**CM 434210.**

U. S. Army Court of Military Review, 1st Cavalry Division.

21 June 1977.

---

Captain John M. Nolan, JAGC, argued the cause for the appellant. With him on the brief were Colonel Alton H. Harvey, JAGC, Lieutenant Colonel James Kucera, JAGC, and Captain Sammy S. Knight, JAGC.

Captain Nancy M. Giorno, JAGC, argued the cause for the appellee. With her on the brief were Lieutenant Colonel Donald W. Hansen, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, and Captain Lee D. Schinasi, JAGC.

Before CLAUSE, COSTELLO and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

COSTELLO, Judge:

We withheld disposition of this case pursuant to a judicial conference agreement. By its terms we were required to await the mandate in *United States v. Jackson,* 3 M.J. 101 (C.M.A. 1977) which further explained the decision of the United States Court of Military Appeals in *United States v. Courtney,* 1 M.J. 438 (C.M.A.1976). In *Courtney* the Court of Military Appeals ultimately determined that the appellant there was denied equal protection of the law because his drug offense had been arbitrarily charged as a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, rather than as one under Article 92, UCMJ, 10 U.S.C. § 892, for which a lesser maximum punishment is provided.[1]

Then, in *United States v. Jackson, supra,* that Court decided that the *Courtney* rule was just for prospective application, *i. e.,* to cases tried or retried after 2 July 1976. 3

M.J. 101 (C.M.A. 1977). Accordingly, *Courtney* does not apply to this case and it is otherwise ready for disposition.

Appellant was tried and convicted by a military judge sitting alone of one charge of possessing heroin in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a bad conduct discharge, confinement at hard labor for 10 months and ancillary penalties.

The issue remaining before us is whether the evidence of heroin seized from appellant at the time of his arrest was improperly admitted at trial. That issue arose as follows: A military police investigator received an eye-witness report that appellant had undertaken to sell heroin to another person in the presence of the witness who also said that appellant had 16–20 "balloons" of heroin in a plastic bag in the left front pocket of his cut-off jeans. The witness also provided the military organization, address and description of appellant. Because a felony was involved, the investigator passed all this information to a CID agent who contacted appellant's commander to say that he planned to apprehend appellant for possession of heroin. After a meeting at the Orderly Room, the police officers and commander went to appellant's room in the company's barracks where they found appellant dressed as the informant had described him. The CID agent apprehended appellant; then his "pat-down" search disclosed the plastic bag of heroin in the left front trousers pocket identified by the witness to the MPI two hours earlier.

Appellant contends that the search was defective because the company commander was not provided with sufficient information concerning the reliability of the witness to permit him to authorize a search as an independent magistrate within the meaning of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We find

---

1. This case, among others, was the subject of a Motion to Hold in Abeyance submitted and granted *sub nom. United States v. Akers et al.,* on 20 October 1976, CM 433331. The proceedings in these cases are described in *United States v. Renfroe,* 3 M.J. 790 (A.C.M.R. 20 June 1977).

appellant's contention inapposite on these facts and agree with the appellee that the search was conducted incident to a lawful arrest.[2]

For clarity, we summarize here several further findings of fact essential to our decision. The military police investigator, SGT Meyers, received a complete eye-witness report of two felonies, attempted sale and continuing possession of heroin, by appellant.[3] Meyers relayed all that information to Agent Treffts of the CID as his duty required. Treffts then called on appellant's company commander to seek help in finding appellant and to announce his intention to enter CPT Cooley's company area to apprehend appellant.[4] Treffts and Cooley also discussed a search of appellant's room, but the evidence here came only from appellant's person. Agent Treffts obtained the evidence by ascertaining appellant's identity, telling him "he was under apprehension," restricting him inside his room, and placing him "in the wall search to preserve any evidence. . . ."[5]

The question then becomes, did Agent Treffts have lawful authority to apprehend Gutierrez and to search him incident thereto?

Agent Treffts had apparent authority to apprehend and search appellant. Article 7(b), UCMJ; paragraph 19a, MCM, 1969 (Rev. ed.). His actual authority then depends only on the reasonableness of his belief that a crime has been committed by the accused person. The only threat to the reasonableness of Treffts' belief is that his information was all "hearsay" from MPI Meyers. That threat is more apparent than real; it is probably the product of a superficial application of the *Aguilar-Spinelli* requirements for corroboration of hearsay reports presented to a magistrate. *United States v. Bell,* 457 F.2d 1231 (5th Cir. 1972). However, it is one thing to require a judicial official to probe and be satisfied concerning the accuracy of information offered to him second or third hand; it is another to interpose judicial standards and scrutiny into the communications between police officers.

Our previous discussion of the facts shows that MPI Meyers had a reasonable belief that appellant had committed two felonies. But for internal regulations distributing certain aspects of police work in the Army, Meyers could have lawfully apprehended appellant himself. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), *citing Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1924); paragraph 19a, MCM, *supra.* Therefore, the narrow question in this case is: Was the probable cause possessed by MPI Meyers sufficient to support the warrantless arrest by Agent Treffts, based only on Meyers' report to Treffts?

The hearsay apparent in this formulation of the question is not of the objectionable variety. "Brother officers" are, *per se,* reliable informers within the meaning of *Aguilar* and *Spinelli. United States v. Ventres-*

---

2. We concentrate on the search of the person because it came first and because there is some doubt about the adequacy of the information here to support an area search. However, there is no doubt about the reliability of the information. The report here came from a good-citizen eyewitness, not from one criminal "dropping a dime" on another. Such reports of crimes in progress are sufficiently reliable for a magistrate. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *McCreary v. Sigler,* 406 F.2d 1264 (8th Cir. 1969); *cert. den.* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); *United States v. Smallwood,* 22 U.S.C.M.A. 40, 46 C.M.R. 40 (1972).

3. "Complete" in the sense of Article 7(b), UCMJ, 10 U.S.C. § 807(b).

4. It is routine military practice not to enter the area of another unit on duties affecting that unit without at least the courtesy of notification.

5. Agent Treffts at trial voiced some confusion about the legal import of the terms "arrest" and "apprehension," but in police practice the terms are synonymous and their occurrence or nonoccurrence is a question of fact. *United States v. Kinane,* 1 M.J. 309 (C.M.A.1976); *United States v. Thurston* (A.C.M.R. 15 July 1976) [Concurring Opinion of Jones, Sr. J., citing *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)].

*ca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Even state officers may be brothers to federal officers within the meaning of this rule. *Brooks v. United States,* 416 F.2d 1044 (5th Cir. 1969), *cert. den.* 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1971); *United States v. Morin,* 250 F.Supp. 507 (D.Conn.1966).

█ The information one police officer may thus pass to another is not limited to that supplying probable cause to search; it may also provide probable cause to arrest. The rule is as follows:

> "It is not necessary for the officer making the arrest to know of the reliability of the informer or to be, himself, in possession of information sufficient to constitute probable cause, provided he acts on the direction or as a result of communication with a brother officer or that of another police department and provided the police as a whole are in possession of information sufficient to constitute probable cause to make the arrest. . . ."

*People v. Horowitz,* 21 N.Y.2d 55, 286 N.Y. S.2d 473, 476, 233 N.E.2d 453, 455 (1967); *followed* in *People v. Smith,* 31 A.D.2d 863, 297 N.Y.S.2d 225 (1969). In adopting this rule under a statute like Article 7(b), the Supreme Court of Colorado said that one law enforcement officer has " . . . the right to rely upon the information relayed to him by his fellow law enforcement officers." *People v. Nanes,* 174 Colo. 294, 483 P.2d 958, 962 (1971), *citing Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) and *United States v. Ventresca, supra; People v. Tangas,* 545 P.2d 1047 (Colo.1976). This rule is now being applied without question in Federal practice. For a recent example, see the report of Officer Giletti in *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

We find that the police here, as an entity, had probable cause to arrest appellant and that appropriate information was relayed to the arresting officer. We hold that the apprehension of appellant was lawful and that the fruits of the search incident thereto were admissible into evidence against him.

Accordingly, the findings of guilty and the sentence are *AFFIRMED.*

Judge DeFORD, concurs.

Senior Judge CLAUSE, not participating.